1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Michael Gerrod Ellis,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-15-8119-PCT-SPL (JFM)

**Report & Recommendation
on Petition for Writ of Habeas Corpus**

## I.   MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at San Luis, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 9, 2015 (Doc. 1).  On October 19, 2015, Respondents filed their Response (Doc. 10).   Petitioner filed a Reply on October 28, 2015 (Doc.  12).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.   RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.   FACTUAL BACKGROUND

In opposing Petitioner's Petition for Post-Conviction Relief, the state presented the following factual summary:

> On January 27, 2011, officers from the Prescott Valley Police Department (PVPD) responded to 6280 Rockland #A, Prescott Valley, AZ, an apartment Michael Gerrod Ellis (Defendant) shared with his girlfriend (M.S.). Defendant had assaulted M.S., and marijuana and drug paraphernalia were discovered. Defendant admitted the marijuana and drug paraphernalia belonged to him. Defendant was cited and M.S. left the residence and temporarily moved into a women's shelter because she

1

feared Defendant.

On January 31, 2011, M.S. requested and was granted an Order of Protections (OOP) against Defendant. The OOP prohibited Defendant from contacting M.S. or going to the Rockland residence.

On February 1, 2011, PVPD responded to the Rockland address where they observed two windows broken with what appeared to be a large rock. Investigation determined Defendant was sending threatening text messages to M.S. on her cell phone saying "sleep light" and "I hope you are ready for revenge." PVPD responded back to the Rockland residence later in the day on February 1, 2011, because there was a report of a structure fire. The origin of the fire was determined to be the bed in the master bedroom, directly under the window which was broken earlier by the large rock. A gas can was located and believed to be what was used as an accelerant.

Police investigation discovered that on February l, 2011, Defendant called a taxi, requesting the taxi-driver take him to Robert's Market in Prescott Valley where he purchased a gas can, gas, gloves, and then asked the taxi-driver to drive him to a location on Tower Road approximately one block away from the Rockland residence. Defendant was visible on video from Robert's Market. Statements from the taxi-driver confirmed he drove Defendant to Robert's Market, waited for him to make his purchases and then drove him to the location on Tower Road.  Witnesses observed Defendant leave the taxi while it was parked on Tower Road and walk towards the Rockland residence with the gas can in hand and then quickly come walking back to the taxi without the gas can.

The fire in the apartment was extinguished by local fire personnel; however, there was severe damage to the interior of the apartment. Investigation determined there was an elderly couple who lived in an adjacent apartment, one with mobility issues, who were at home at the time the fire was started, putting them at a substantial risk of imminent death or physical injury.

Police stopped the taxi on SR 89A near Viewpoint and Defendant was taken into custody.

When Defendant was interviewed by PVPD, he smiled and said "I guess she is homeless now too."

(Exhibit AA, PCR Response at 1-3.) (*See also* Exhibit M, Police Reports.)  (Exhibits to the Answer, Doc. 10, are referenced herein as "Exhibit ___.")

**B.**   **PROCEEDINGS AT TRIAL**

On February 9, 2011, Petitioner was indicted in Yavapai County Superior Court on charges of: (1) arson, a Class 2 felony; (2) burglary, a Class 2 felony; (3) aggravated criminal damage, a Class 4 felony; (4) aggravated harassment, a Class 6 felony; (5) reckless endangerment, a Class 6 felony; (6) reckless endangerment, a Class 6 felony; and (7) assault, a Class 3 felony.  (Exhibit A, Indictment.)

**Rule 11 Proceedings** – Some eleven months later, trial counsel filed an unopposed Motion for Rule 11 Prescreen (Exhibit B), on the basis that Petitioner might not be competent to stand trial.  The motion was granted, and an evaluation was ordered. (Exhibit C, Order 1/19/12.)

Petitioner was examined by Dr. Sullivan, Psy.D., who opined:

> He appears to be functioning within the broad normal range of intelligence. In this evaluation he did not exhibit any cognitive deficits that would interfere with his ability to proceed with the present proceedings.

> Mr. Ellis has a history of mental health problems and he has been hospitalized numerous times. He suffers from PTSD and he has a 100% service connected disability. He stated that at the time of the alleged commission of the crimes he was not taking his medications. In my opinion, his ongoing competency is dependent upon his continuing his medications. If he should stop taking his medications it is very likely that he will decompensate and become incompetent.

(Exhibit R-D, Rule 11 Report 1/26/12 at 1.)   (Exhibits to the Reply, Doc. 12, are referenced herein as "Exhibit R-___.")

Based upon the report, the Court found Petitioner competent, and set the matter for trial.  (Exhibit D, M.E. 2/6/12.)

**Plea Proceedings** – On May 3, 2012, Petitioner appeared with counsel for a settlement conference.   The court reviewed the potential sentences, noting that: (1) Petitioner qualified as a Category 2 repetitive offender for sentencing on the arson, criminal damage and aggravated harassment charges; (2) the burglary, and reckless endangerment charges were charged as dangerous felonies; (3)  the sentencing ranges for counts 1 (arson) and 2 (burglary) were 7 to 21 years; (4) the sentencing ranges for the two reckless endangerment charges was 1.5 to 3 years on each; (5) the arson carried a presumptive term of 9.25 years; (6) the aggravated criminal damage carried a presumptive term of 4.5 years; (7) the aggravated harassment carried a presumptive term of 1.75 years; (8) if presumptive, consecutive sentences were imposed, Petitioner could be sentenced to 30 years; (9) it was likely that at least some sentences would be consecutive because they involved separate crimes; (10) even with concurrent,

presumptive sentences, an effective term of 20 years could be imposed; (11) Petitioner might qualify as a Category 3 repetitive offender, increasing the range on the Class 2 felonies up to 35 years, with a presumptive of 15.75.  (Exhibit JJ, R.T. 5/3/12 at 1-9.) The court also reviewed the terms of the plea offer, and potential sentencing, including the court's intent to sentence Petitioner to 10.5 years in prison and 3 years probation. (*Id.* at 9-11.)

At trial counsel's request, the prosecution reviewed the available evidence, including witnesses to the purchase of the gasoline, and starting the fire, the victim's testimony about the domestic violence incident, the cab driver, the witnesses to the fire, the fire investigator and detectives, one of the elderly victims, the order of protection, and the text messages (*id.* at 11-15), as well as the store video, store clerk, remains of the gas can and some gas (*id.* at 20).  The Court noted that the advanced age of the victims was an aggravating factor.  (*Id.* at 15.)  Trial counsel noted, however, Petitioner's military service, PTSD, mental health concerns, lack of actual physical injury to the victims, which the court acknowledged as the basis of its intent to impose a 10.5 years sentence, but noted that aggravating factors would be up to the jury if the matter went to trial. (*Id.* at 16-18.)  Petitioner asked for an explanation of a mitigating factor, which the court provided.  (*Id.* at 18-19.)  The court reviewed the available credit for time served. (*Id.* at 19-20.)

The next day, Petitioner entered into a written Plea Agreement (Exhibit G), agreeing to plead guilty to the arson (dangerous, non-repetitive), aggravated harassment, and two reckless endangerment charges (all non-dangerous, non-repetitive).  In exchange, the prosecution agreed that Petitioner would be sentenced to 10.5 to 15 years on the arson and aggravated harassment charges, and consecutive terms of probation on the reckless endangerment, and to dismiss the burglary, aggravated criminal damage, and assault charges.

Petitioner entered his plea of guilty the same date, with the court finding that Petitioner's plea was knowing, intelligent and voluntary, and accepting the plea.

(Exhibit F, R.T. 5/4/12; Exhibit E M.E. 5/4/12.)

**Sentencing** – A Presentence Report (Exhibit L) was prepared, concluding that Petitioner posed "high risk for re-offending." (*Id.* at 9.)   The Report made no recommendations beyond financial assessments.

Petitioner appeared for sentencing on May 30, 2012 and was sentenced to 10.5 years flat time on the arson, and a consecutive suspended sentence and 3 years probation on the aggravated harassment and endangerment charges.  (Exhibit H, Sentence 5/30/12; Exhibit I, R.T. 5/30/12; Exhibit J, Conditions of Probation.)

## C.   PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 2.)  Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

## D.   PROCEEDINGS ON POST-CONVICTION RELIEF

On August 6, 2012, Petitioner filed a Notice of Post- Conviction Relief (Exhibit N).  Counsel was appointed, who eventually filed a Notice of No Claim (Exhibit U), evidencing an inability to find an issue for review and seeking an extension of time for Petitioner to file a *pro per* PCR petition.  The extension was granted (Exhibit V, Order 1/10/13), and on February 19, 2013 Petitioner filed his original *Pro Per* Petition for Post-Conviction Relief (Exhibit W).  After receiving transcripts, he sought leave to amend his petition (Exhibit X, Motion), which was granted (Exhibit Y, Order 4/24/13).

On May 9, 2013, Petitioner filed his Amended *Pro Per* Petition for Post-Conviction Relief (Exhibit Z), arguing that trial counsel had been ineffective for failing to advise Petitioner that an insanity plea was available, rendering his guilty plea involuntary, and seeking an evidentiary hearing.  The State responded (Exhibit AA) seeking a summary denial.  On July 8, 2013, the PCR court denied the PCR petition without conducting an evidentiary hearing.  (Exhibit CC, Order 7/8/13.)

Petitioner then sought review (Exhibit HH), again raising his ineffective assistance claim.  On June 18, 2015, the Arizona Court of Appeals granted review, but denied relief.  (Exhibit II, Mem. Dec. 6/18/15.)

## E.    PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 9, 2015 (Doc. 1).  "Petitioner raises one ground for relief, arguing that his Fifth, Sixth, and Fourteenth Amendment rights were violated because he received ineffective assistance of counsel when his counsel failed to conduct pretrial investigation regarding a plea of guilty except insane."  (Order 7/21/15, Doc. 5 at 1-2.)

**Response** - On October 19, 2015, Respondents filed their Response ("Answer") (Doc. 10).  Respondents argue that Petitioner's claim of ineffective assistance of counsel is without merit, and that his guilty plea resulted in the waiver of his claim.

**Reply** - On October 28, 2015, Petitioner filed a Reply (Doc. 12).   Petitioner argues the merits of his claim, asserting that Dr. Sullivan's report is evidence of his insanity, that time spent in the Arizona State Hospital is qualitatively different from time spent in prison, and that there would be a potential for release from the Arizona State Hospital.    Petitioner complains that the state has presented no affidavit from trial counsel to refute Petitioner's contentions.

## III.    APPLICATION OF LAW TO FACTS

### A.    WAIVER

Respondents argue that Petitioner waived his right to bring his instant claim of ineffective assistance by entering a guilty plea, which amounts to a repudiation of his admission of committing the offenses, and agreement to the sentences.  (Answer, Doc. 10 at 15, *et seq.*)

If Petitioner were simply asserting that his conviction was invalid because of his

insanity at the time of the offense, Respondents would be correct. But that is not the nature of Petitioner's claim.  Rather, Petitioner asserts that his plea was involuntary because it was based upon the defective advice of counsel, who despite knowing of Petitioner's mental conditions failed to investigate and advise Petitioner that he could plead guilty except insane.  "If the Petitioner['s] trial attorney Thomas K. Kelly had not lied to him he would have went to trial and pled guilty except insane and let the mental health experts, judge, and jury decide his [fate]."  (Petition, Doc. 1 at 8.)

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [the range of competence demanded of attorneys in criminal cases]."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Because Petitioner's claim falls into the latter category, it survives his guilty plea.

**B.**     **GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL**

**1.**     **Arguments**

In Ground One, Petitioner argues that his plea was not knowing and voluntary because trial counsel was aware of facts (including Petitioner's assertions) that Petitioner was insane at the time of his offenses, and yet failed to investigate a mental state defense, and told Petitioner that he could not plead guilty except insane.  (Petition, Doc. 1 at 6-8.)

Respondents argue that Petitioner fails to show that the rejection of this claim by the Arizona Court of Appeals was not contrary to or an unreasonable application of state law, nor an unreasonable determination of the facts, as mandated by 28 U.S.C. § 2254(d) for habeas relief. In particular, Respondents argue that there was nothing to suggest that Petitioner was insane, and because an insanity plea would have been greatly detrimental to Petitioner, there was no prejudice.

Petitioner replies that evidence of his insanity consisted of his medical history, Petitioner having not taken his medication, and the Rule 11 exam report.  He argues that the insanity plea would have been beneficial because of the better conditions in the state mental health facility, compared to prison, and the potential for early release.

## 2.    Standard of Review on Habeas

While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam). Rather, to justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.   28 U.S.C. §2254(d)(1).

**Errors of Fact** -   Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."   *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence.   There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut

the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

### 3.   State Court Decision

The last reasoned decision on Petitioner's claim was that of the Arizona Court of Appeals on review of Petitioner's PCR petition.  In disposing of Petitioner's claim the Arizona Court of Appeals concluded *inter alia*[1] that Petitioner had failed to show that an insanity plea was viable, and thus failed to show ineffective assistance, and failed to show prejudice because he would have been subject to substantially greater sentencing on all charges, and would have had to serve any prison term in the state mental health facility.  (Exhibit II, Mem. Dec. 6/18/15.)

### 4.   Effect of Guilty Plea

As discussed hereinabove in section III(A), Petitioner's guilty plea precludes him from pursuing any claims arising prior to his guilty plea, except to the extent that he attempts to show that is plea was the result of ineffective assistance of counsel. *Tollett*, 411 U.S. at 267.

### 5.   Applicable Standard on Ineffective Assistance Claims

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable

---

[1]  Petitioner raised, and the Arizona Court of Appeals addressed, additional claims regarding counsel's performance at sentencing and advice regarding the applicability of "flat time."

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

**<u>Deficient Performance</u>** - An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).   The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

Petitioner complains that no explanation or response from trial counsel has been provided.  However, such a response is not necessary to defend against a claim of ineffective assistance because the court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation. *Morris v. California*, 966 F.2d 448, 456-457 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992).  On the other hand, while they need not discern the actual reason for counsel's conduct to deem it reasonable, "courts may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions." *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (quoting *Wiggins v. Smith*, 539 U.S. 510,

526–527 (2003)). *See Postconviction Remedies § 35:4 (*citing *Kimmelman v. Morris* and *Wiggins v. Smith*).  Here though, Petitioner has presented no direct evidence of counsel's reasoning.

**Prejudice** - In the context of attacks on the voluntariness of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision).  "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59.

**6.**   **Arizona's Guilty Except Insane Defense**

Arizona statutes provide for a verdict of "guilty except insane" (GEI).  Ariz. Rev. Stat. § 13-502(A).   It is available "if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong."  *Id.*   "Mental disease or defect does not include disorders that result from acute voluntary intoxication or withdrawal from alcohol or drugs, character defects, psychosexual disorders or impulse control disorders."  *Id.*  Moreover, mental illness does not equate to legal insanity under Ariz. Rev. Stat. §

11

13-502.  *See e.g. Clark v. Arizona*, 548 U.S. 735, 746 (2006) ("though Clark was indisputably afflicted with paranoid schizophrenia at the time of the shooting, the mental illness 'did not ... distort his perception of reality so severely that he did not know his actions were wrong.'")   The "guilty except insane" defense is an affirmative defense, and the defendant bears the burden of proving legal insanity "by clear and convincing evidence." Ariz. Rev. Stat. § 13-502(C).

Contrary to Petitioner's apparent belief, and common parlance, "guilty except insane" is not a plea in Arizona, but a defense and a verdict. "We find no support for Hurles' proposition that Arizona recognizes a distinct plea of "not guilty-by-reason-of-insanity." *State v. Hurles*, 185 Ariz. 199, 202, 914 P.2d 1291, 1294 (1996).  "Arizona maintains a distinction between recognized pleas and affirmative defenses, such as insanity." *Id.* at 203, 914 P.2d at 1295.  *See* Ariz. R. Crim. Proc. 14.3(a) (recognizing "plea of not guilty, guilty or no contest); and 5.8(a)(1) (automatic entry of plea of not guilty). *Cf.* Ariz. R. Crim. Proc. 11.3(f) (referencing GEI plea, but discussing "defense pursuant to Ariz. Rev. Stat. § 13-502").  *But see* Ariz. R. Crim. Proc. 11.2(a) (referring to "screening examination for a guilty except insane plea").

Thus, at most, the Arizona rules provide for the disclosure of a defendant's intent to rely upon a defense of insanity.  *See* Ariz. R. Crim. Proc. 15.2(b) (requiring notice of defense of insanity).  And, the Arizona Rules of Criminal Procedure permit a party to request the court order an evaluation as screening for a potential GEI defense.  *See* Ariz. R. Crim. Proc. 11.2(a), and 11.3(f).  Thus, a defendant does not plead guilty except insane, but rather (having given notice of his intent to do so) he asserts as his defense at trial that he was insane at the time of the offense, and seeks to prove that defense to the jury.

Raising GEI defense bears negative results for a defense.  For example, prior bad acts which might otherwise be excluded, become admissible insofar as relevant to the determination of insanity.  *State v. Hurles*, 185 Ariz. 199, 205, 914 P.2d 1291, 1297 (1996).

Moreover, when a defendant has been found GEI, the result is not an absolute acquittal.  Rather, the trial court must: (1) determine the term of sentence applicable for the offense(s); (2) sentence the defendant to the state department of corrections, but place the defendant under the jurisdiction of the psychiatric security review board (PSRB), and commit the defendant to a state mental health facility for the term of the sentence; and (3) determine whether the defendant's conduct "involved the death or physical injury of or a substantial threat of death or physical injury to another person."  Ariz. Rev. Stat. § 13-502(D).  *See also* Ariz. R. Crim. Proc. 25 (commitment to secure mental health facility after GEI verdict).  Pre-sentence incarceration credits cannot be given on such a sentence.  *State v. Bomar*, 199 Ariz. 472, 477, ¶ 16, 19 P.3d 613, 618 (App. 2001), as amended (Feb. 20, 2001).

A non-violent GEI defendant (e.g. one who's conduct did not involve or create a substantial threat of death or injury) is given a release hearing before the PSRB within 75 days to either discharge him from his sentence and the jurisdiction of the PSRB upon a showing he no longer suffers a mental disease or defect and is not dangerous, or to proceed with civil commitment.  Ariz. Rev. Stat. § 13-3994(B) and (C).

A violent GEI defendant is not given an automatic release hearing, and is ineligible for one until 120 days after sentencing.   Ariz. Rev. Stat. § 13-3994(F).  Moreover, a violent GEI defendant bears the burden of establishing by clear and convincing evidence that he no longer suffers from a mental disease or defect and is not dangerous. Ariz. Rev. Stat. § 13-3994(F)(2).  If the defendant meets that burden and the PSRB determines the defendant does not have a propensity to reoffend, he may be released from custody.  But he is neither discharged from his sentence nor released from the jurisdiction of the PSRB.  *Id.* Instead, he may, at any time, be re-confined in the state mental health facility.  *Id.* at 13-3994(M). If however, the defendant no longer requires treatment, but remains dangerous or likely to reoffend, he is not released, but is transferred to the department of corrections to serve the remainder of his sentence.  *Id.* at 13-3994(F)(4).  Thus, at best, a violent GEI defendant can spend some portion of his

13

1  sentence on conditional release, subject to re-commitment.  At worst, he can find himself

2  denied credit for time served, and still end up in prison once he is relieved from his

3  mental disease or defect.

4

5  **7.**     **Application to Petitioner**

6          **(a)     Deficient Performance**

7          Petitioner contends that trial counsel was deficient for failing to investigate and

8  advise him about a guilty except insane plea.

9          **Failure to Investigate** –    A failure to investigate a meritorious defense may

10  constitute ineffective assistance of counsel.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985);

11  *Morris v. California*, 966 F.2d 448 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992);

12  *United States v. Tucker*, 716 F.2d 576, 583 n.16 (9th Cir. 1983). "[C]ounsel has a duty to

13  make reasonable investigations or to make a reasonable decision that makes particular

14  investigations unnecessary. In any ineffectiveness case, a particular decision not to

15  investigate must be directly assessed for reasonableness in all the circumstances,

16  applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at

17  691.  "In assessing the reasonableness of an attorney's investigation, however, a court

18  must consider not only the quantum of evidence already known to counsel, but also

19  whether the known evidence would lead a reasonable attorney to investigate further."

20  *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

21          In the context of a guilty plea, "[w]here the alleged error is counsel's failure to

22  investigate a potential defense, the salient inquiry is whether 'discovery of the evidence

23  would have led counsel to change his recommendation as to the plea.'" *Lambert v.*

24  *Blodgett*, 393 F.3d 943, 982 (9th Cir. 2004) (quoting *Hill*, 474 U.S. at 59).

25          A habeas petitioner may not leave a court to speculate what evidence the deficient

26  investigation would have discovered.  In order to prevail on an allegation that defense

27  counsel conducted an insufficient investigation resulting in ineffective assistance, the

28  petitioner must show specifically what that investigation would have produced.   For

example, a petitioner may not simply speculate about what a witness' testimony might be, but must adduce evidence to show what it would have been. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Here, Petitioner does not proffer any particular evidence that would have been discovered had trial counsel investigated further.  Indeed, the only evidence of his insanity that he currently offers is his medical history as reflected in the Rule 11 report, and his own uncorroborated assertions that he was not taking his medications and was psychotic at the time.  Petitioner points to no other evidence of his lack of medication or his psychosis, let alone evidence of his legal insanity, that would have been discovered had counsel investigated.  At least as of the time of the Rule 11 examination, Petitioner showed no signs of contemporaneous insanity.

Thus, Petitioner fails to support his claim of ineffectiveness based on a failure to investigate.

**Failure to Advise** – Petitioner further complained in his PCR petition: "Defendant told trial counsel he wanted to plea guilty except insane, trial counsel told him he could not." (Exhibit Z, Amend. PCR Pet. at 6.)  As discussed hereinabove, there is no GEI plea in Arizona, merely a defense, which must be noticed.

To the extent that Petitioner is simply referring to a notice of intent to pursue a GEI defense, given the limited evidence to support such a defense, counsel's advice that such a defense was not available was not unreasonable.

The Arizona Court of Appeals concluded that Petitioner had failed to show that a GEI defense was viable.

Apart from his own assertions, Petitioner proffers little to support a finding that he

was legally insane at the time of the offenses.[2]   In support of his claims, Petitioner points to the Rule 11 Report, which stated:

> Mr. Ellis is currently taking psychotropic medication that help to stabilize his mental health symptoms. If he does not take his medications he is very likely to have serious symptoms that may include paranoia and/or hallucinations and delusions. This decompensation could cause him to become incompetent.

(Exhibit R-D, Rule 11 Report at 4.)   The report also related Petitioner's assertions that he had not been taking his medications at the time of the offense.  (*Id.* at 1.)

Thus, trial counsel had, at best, information that Petitioner had known psychiatric issues, including "visual and auditory hallucinations," that could have reappeared had he not been medicated, and that Petitioner had self-reported as being un-medicated and psychotic. (Exhibit R-D, Expert Report at 2, 4.)

On the other hand, the information available to counsel showed that Petitioner's intellectual level was "within the broad normal range" (*id.* at 3), and he was at least as of the time of evaluation, competent to stand trial.

Moreover there was substantial evidence to counter the contention that Petitioner was "psychotic" or delusional at the time of his offenses.  Petitioner had engaged in a pattern of purposeful conduct, including gathering supplies to commit the arson, enlisting the assistance of the cab driver, and acting to prevent detection by having the cab stop on a different street, wearing gloves, leaving the new gas can at the scene, repeatedly passing the home on the adjacent street, directing the cab away from the gathered police cars waiting for Petitioner, and terminating his statements to the investigating officer when asked about the fire.  (*See* Exhibit M, Police Reports, Report 11-3065 at 4-6.)

Even if Petitioner were psychotic, delusional or hallucinating, that would not

---

[2] In his PCR Petition, Petitioner alleged: "The Defendant states that when he first met with trial counsel Thomas Kelly he told him he was psychotic when the crimes were committed." (Exhibit Z, Amend. PCR Pet. at 4.)   Petitioner first raised the assertion that he was not taking his medications, and had so advised counsel, in his PCR Reply. (Exhibit BB, PCR Reply at 4.)

establish that he did not know the criminal act was wrong, the showing necessary to support an insanity defense. *See e.g. State v. White*, 110 Ariz. 508, 511, 520 P.2d 1132, 1135 (1974) (Struckmeyer, J., dissenting) (quoting *People v. Sloper*, 198 Cal. 238, 245, 244 P. 362, 365 (1926)) ("Although he may be laboring under partial insanity, as, for instance, suffering from some insane delusion or hallucination, still if he understands the nature and character of his action and its consequences-if he has knowledge that it is wrong and criminal, and that if he does the act he will do wrong-such partial insanity or the existence of such delusion or hallucination is not sufficient to relieve him from the responsibility for his criminal acts."). Petitioner's actions to evade detection suggest he was cognizant of the wrongness of his acts. *See e.g. United States v. Black*, 739 F.3d 931, 933 (6th Cir.) cert. denied, 134 S. Ct. 2326 (2014) (steps to conceal conduct evidence of appreciation of wrongfulness of conduct).   Similarly, Plaintiff's apparent motive of retaliation for being rendered homeless suggests Petitioner's actions were not the result of a psychotic state. *See State v. Moody*, 208 Ariz. 424, 453, ¶ 106, 94 P.3d 1119, 1148 (2004) (discussing expert opinion that "psychotic killings rarely have 'any rational motive'").

Under these circumstances, counsel could have reasonably concluded that a guilty except insane defense was untenable, and thus have proceeded with such advice to Petitioner and to have reasonable encouraged him to accept the guilty plea.

### (b)   **Prejudice**

Even if trial counsel performed deficiently in failing to investigate or advise Petitioner about a GEI defense, Petitioner must still show prejudice from such failures. That is, Petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.   Here, Petitioner's allegation that (properly advised) he would have proceeded to trial is not plausible.

Given the limited evidence of Petitioner's legal insanity, the evidence showing his legal sanity, and his burden to establish the defense, the likelihood of Petitioner succeeding at trial was limited.

Moreover, rather than have a plea agreement, he would have faced trial on all the charges, the potential for aggravated, repeat-offender sentences (including up to 35 years each on the Class 2 offenses), and for consecutive sentences. Even if all charges related to the arson were concurrent, in light of the trial court's reference to consecutive sentencing for separate crimes (Exhibit JJ, R.T. 5/3/12 at 6), it was likely that the sentence on the aggravated assault and harassment charges would be consecutive, having arisen on separate occasions.

To be sure, time in a mental health treatment facility may be less onerous than time in prison. *See* Michael Stoll, *Miles to Go Before We Sleep: Arizona's "Guilty Except Insane" Approach to the Insanity Defense and Its Unrealized Promise*, 97 Geo. L.J. 1767, 1781-82 (2009) ( "it can scarcely be argued that a protracted stay in a mental health facility is worse than prison, notorious for its total deprivation of liberty and dignity"). And, the GEI verdicts would not qualify as prior convictions for sentencing enhancement purposes. Ariz. Rev. Stat. § 13-502(E).

But, even if Petitioner were successful in obtaining a GEI verdict, he would have still suffered substantial consequences. It appears likely that the Court would have made a determination that Petitioner's conduct was a violent offense (*i.e.* it involved or created a substantial threat of death or injury), and thus Petitioner would not have been automatically permitted discharge until the expiration of the potential prison sentence. Moreover, even if released upon completion of treatment, if he were deemed dangerous or likely to re-offend (which the presentence report indicated was likely), he would have simply been transferred to prison. Ariz. Rev. Stat. § 13-3994. Further, he would not have been permitted the 484 days of presentence incarceration credit allowed in the sentence.

In contrast, the plea agreement eliminated all but four charges, and guaranteed a non-repetitive, presumptive term of 10.5 years on the arson, and probation on the remaining three charges.

Under these circumstances, the assertion is not plausible that Petitioner would have foregone the benefits of the plea agreement and proceeded to encounter likely defeat at trial in exchange for the hope of the fairly limited benefits of GEI verdict.

## 8.   **Conclusion re Ground One**

The Arizona Court of Appeals disposed of Petitioner's claim of ineffective assistance by finding both a failure to show deficient performance, and a failure to show prejudice.  Based upon the foregoing, the undersigned concludes that Petitioner has failed to show that decision was contrary to or an unreasonable application of Supreme Court law, or an unreasonable determination of the facts before that court.  Accordingly, Petitioner's Ground One is without merit, and the Petition must be denied.

## IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed July 9, 2015 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.     EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: January 27, 2016

15-8119r RR 16 01 20 on HC.docx

James F. Metcalf
United States Magistrate Judge

21